1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

### EASTERN DISTRICT OF CALIFORNIA

10
11

DANNY MADRID,                                1:07-CV-00331 OWW SMS HC

                    Petitioner,        FINDINGS AND RECOMMENDATIONS
12                                     REGARDING PETITION FOR WRIT OF
                                       HABEAS CORPUS
        v.
13

14    KATHY MENDOZA-POWERS, Warden,

15                    Respondent.
                                        /
16

17        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18    pursuant to 28 U.S.C. § 2254.  This action has been referred to this Court pursuant to 28 U.S.C.

19    § 636(b)(1) and Local Rule 72-302.

20                              **BACKGROUND**[1]

21        Petitioner is currently in the custody of the California Department of Corrections pursuant

22    to a judgment of the Superior Court of California, County of Orange, following his conviction by

23    jury trial in 1981, of second degree murder, attempted murder, and two attempted robberies. See

24    Petition at 2.  Petitioner was sentenced to a total indeterminate term of 20 years to life with the

25    possibility of parole. Id.

26        On February 28, 2006, a tenth parole suitability hearing was held by the California Board

27

28
        [1]This information is derived from the petition for writ of habeas corpus, the exhibits attached to the petition,
    Respondent's answer to the petition, and the exhibits lodged with the answer.

of Prison Terms ("Board") at Avenal State Prison. <u>See</u> Petition, Exhibit A. Petitioner attended

the hearing and was represented by his attorney, Patrick Sparks, Esq. <u>Id</u>. At the conclusion of the

hearing, the Board denied parole and deferred rehearing for one year. <u>Id</u>. at 113.

Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court

challenging the Board's decision. <u>See</u> Answer, Exhibit 4. The petition was denied in a reasoned

decision on August 8, 2006. <u>See</u> Answer, Exhibit 5. On September 7, 2006, Petitioner filed a

petition for writ of habeas corpus in the California Court of Appeals, Fourth Appellate District.

<u>See</u> Answer, Exhibit 6. On October 12, 2006, the petition was summarily denied. <u>See</u> Answer,

Exhibit 7. On October 25, 2006, Petitioner filed a petition for review in the California Supreme

Court. <u>See</u> Answer, Exhibit 8. On January 17, 2007, the California Supreme Court summarily

denied the petition, but Justices Kennard, Werdegar, and Moreno were of the opinion the petition

should have been granted. <u>See</u> Answer, Exhibit 9.

On February 28, 2007, Petitioner filed the instant petition for writ of habeas corpus in this

Court. The petition for writ of habeas corpus does not challenge the underlying conviction;

rather, it challenges the February 28, 2006, decision of the California Board of Prison Terms

denying parole for a tenth time. Petitioner claims the Board's decision denying parole is devoid

of any evidence, relevant to current dangerousness, thereby denying Petitioner his due process

rights. He further contends his sentence has become excessive in violation of the Eighth

Amendment. On June 15, 2007, Respondent filed an answer to the petition. Petitioner filed a

traverse on July 5, 2007.

## FACTUAL BACKGROUND[2]

On February 28, 1981, at around midnight, Petitioner drove with two friends to a store to

purchase alcohol. Petitioner had been drinking all day and had consumed approximately twelve

---

[2]The facts are derived from Petitioner's statements to the parole board. <u>See</u> Petition, Exhibit A at 7-23.

1    beers. Petitioner was seventeen years old at the time. After purchasing beer, one of Petitioner's

2    friends stated he wanted to stop by a party in the neighborhood, which they did until

3    approximately 1:00 a.m. They left and began driving around looking for other parties.

4         At around 2:00 a.m., they arrived at a bar where the patrons were leaving for the night.

5    They spotted three individuals hitchhiking outside. One of the individuals was staggering and

6    being held up by another, while the third attempted to wave down a ride. Petitioner and his

7    friends stopped, as did another vehicle driven by Leonardo Villa. The two separate parties

8    conferred with the hitchhikers and it was decided that the two vehicles would drive the

9    hitchhikers to their home. Villa drove one of the hitchhikers and led the way, while Petitioner

10   drove his friends and the other two hitchhikers, including the one who had been staggering. They

11   drove around a residential area for some time and eventually stopped. Villa then came over to

12   Petitioner and told him that his passenger was lost and couldn't determine where his house was.

13   Petitioner became frustrated and decided to let the passengers out where they were, and they

14   could find their own way home. However, Villa objected and stated they had agreed to take the

15   passengers home. The two got into a verbal argument which quickly escalated into a physical

16   altercation. Villa appeared to be getting the better of Petitioner, and Petitioner realized he was

17   losing the fight, so he pulled out a knife and stabbed Villa numerous times. Villa sustained three

18   stab wounds to the arm and three stab wounds to the chest. Petitioner then demanded Villa's

19   money. After this occurred, people began to break up the fight.

20        Petitioner then got back into his vehicle with his two friends and all three of the

21   hitchhikers. William Rieves, the passenger who had been staggering, was now passed out in the

22   vehicle. The six of them then drove away. Villa's friends helped Villa back into his vehicle and

23   they followed Petitioner.  Petitioner spotted Villa's vehicle behind him so he pulled over thinking

24   they wanted to continue the fight. Instead, Villa's vehicle side-swiped the driver's side of

25   Petitioner's vehicle and continued on. The passengers in Petitioner's vehicle then began yelling

26                                              3

27

28

1   and hollering. One of the passengers made numerous Latino racial slurs directed toward the other

2   vehicle, despite the fact that Petitioner and his two friends were also Latino.

3          At this point, Petitioner stopped his vehicle and demanded that everyone get out.

4   Everyone complied except for Rieves who was still unconscious in the back seat. The passenger

5   who had made racial slurs continued his rant, so Petitioner punched him in the face. The

6   passenger and his friend then ran away. Petitioner directed his two friends to remove the

7   unconscious Rieves from his vehicle. They did so and began kicking and beating him. Rieves

8   remained unconscious. Petitioner then came up to him while his friends beat him, took out his

9   knife and stabbed him several times in the chest, killing him. They then drove off leaving the

10  body in the street.

11                                          **DISCUSSION**

12  I.      Standard of Review

13         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

14  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

15  enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

16  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

17  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

18  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

19  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

20  provisions.

21         Petitioner is in custody of the California Department of Corrections pursuant to a state

22  court judgment. Even though Petitioner is not challenging the underlying state court conviction,

23  28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the

24  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

25  Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

26                                               4

27

28

1   F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

2   state prisoner in custody pursuant to a state court judgment, even when the petition is not

3   challenging his underlying state court conviction.'").

4          The instant petition is reviewed under the provisions of the Antiterrorism and Effective

5   Death  Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S.

6   63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless

7   the adjudication of the claim "resulted in a decision that was contrary to, or involved an

8   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

9   of the United States" or "resulted in a decision that was based on an unreasonable determination

10  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

11  § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

12         As a threshold matter, this Court must "first decide what constitutes 'clearly established

13  Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

14  *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

15  Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

16  of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

17  words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

18  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

19         Finally, this Court must consider whether the state court's decision was "contrary to, or

20  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

21  72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

22  grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

23  Court on a question of law or if the state court decides a case differently than [the] Court has on a

24  set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

25  at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

26                                                5

state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Id</u>. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." <u>Id</u>. at 409.

 Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. <u>Baylor v. Estelle</u>, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  <u>See</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1069 (9th Cir.2003); <u>Duhaime v. Ducharme</u>, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. <u>Souch v. Schaivo</u>, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     <u>Review of Claims</u>

A parole release determination is not subject to all of the due process protections of an adversary proceeding. <u>Pedro v. Oregon Parole Board</u>, 825 F.2d 1396, 1398-99 (9th Cir. 1987); <u>see also</u> <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 12 (1979) (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution,

6

1    the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated,

2    even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of

3    Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, an inmate is

4    entitled to the following procedural protections: 1) the inmate must receive advance written

5    notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to

6    be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied parole, the inmate must be

7    told why "he falls short of qualifying for parole." Id.

8         As to these procedural protections, as Respondent submits, Petitioner was provided all

9    that is required.  Petitioner was provided with advance notice of the hearing, an opportunity to

10   submit materials for the Board's consideration, an opportunity to be heard during the hearing,

11   representation by his attorney, and a written decision explaining the reasons that parole was

12   denied.

13        "In Superintendent, Mass. Correc. Inst. v. Hill, the Supreme Court held that 'revocation

14   of *good time* does not comport with 'the minimum requirements of procedural due process,'

15   unless the findings of the prison disciplinary board are supported by *some evidence* in the

16   record.'  472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)."

17   Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added). The

18   Ninth Circuit has held that this same standard also extends to parole determinations. Hayward v.

19   Marshall, ___ F.3d ____, 2008 WL 43716 *5 (9th Cir.2008), *citing* Irons v. Carey, 505 F.3d 846,

20   851 (9th Cir.2007), *quoting* Hill, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]

21   clearly established that a parole board's decision deprives a prisoner of due process with respect

22   to this interest if the board's decision is not supported by 'some evidence in the record,' or is

23   'otherwise arbitrary.'"). In assessing "whether a state parole board's suitability determination was

24   supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

25   regulations governing parole suitability determinations in the relevant state." Hayward, 2008 WL

7

26

27

28

1   43716 *5, *quoting* Irons, 505 F.3d at 851. Here, the Court must look to California law and review

2   the record. In reviewing the record and determining whether the "some evidence" standard is

3   met, the Court need not examine the entire record, independently assess the credibility of

4   witnesses, or re-weigh the evidence. Sass, 461 F.3d at 1128.

5       California law provides that after an inmate has served the minimum term of confinement

6   required by statute, the Board "shall set a release date unless it determines that the gravity of the

7   current convicted offense or offenses, or the timing and gravity of current or past convicted

8   offense or offenses, is such that consideration of the public safety requires a more lengthy period

9   of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel

10  the prisoner will pose an unreasonable risk of danger to society if released from prison," the

11  prisoner must be found unsuitable and denied parole. Cal. Code Regs. tit. 15, § 2402(a). The

12  Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors it

13  has set forth in the California Code of Regulations.

14      To determine whether 'some evidence' supports the state court decision, the test is not

15  whether some evidence supports the reasons cited for denying parole, "but whether some

16  evidence indicates a parolee's release unreasonably endangers public safety." Hayward, 2008 WL

17  43716 *5, *quoting* In re Lee, 143 Cal.App.4th 1400, 1408 (Cal.Ct.App.2006).

18      In denying parole in this case, the Board provided four reasons for its decision: 1) The

19  nature of the commitment offense; 2) Previous record of violence; 3) Oppositions by the Santa

20  Ana Police Department and the Orange County District Attorney's Office; and 4) Inconsistencies

21  in Petitioner's version of the commitment offense. Petitioner contends that none of these reasons

22  support the finding that he poses an unreasonable risk of danger to society if released. A review

23  of the Board's decision reveals that the state court decision approving the Board's determination

24  of unsuitability was unreasonable.

25      The most important factor in the Board's determination was the commitment offense

26                                          8

itself. The Board determined that the offense was carried out in an especially atrocious and

heinous manner under 15 C.C.R. § 2402(c)[3]. In support of its determination, the Board made a

positive finding as to the factor set forth in § 2402(c)(1)(A), that multiple victims were attacked.

This finding is supported by the evidence. Petitioner stabbed victim Villa six times, and later

stabbed and killed victim Rieves. See Petition, Exhibit A at 16-17, 22-23.

The Board also found that the motive for the crime was very trivial pursuant to

§ 2402(c)(1)(E). Petitioner essentially conceded this finding at the hearing. When questioned on

his motivation for committing the crime, he admitted, "[T]o be honest, there was no reason for

me to have done that . . . . There's absolutely none." Id. at 26. He could only identify feelings of

anger. Id. at 17, 23, 26. Therefore, this finding is also supported by the evidence.

The Board also determined that the offense was carried out in a dispassionate and

calculated manner pursuant to § 2402(c)(1)(B). This finding is well supported by the fact that

Petitioner stabbed and killed an unconscious person. As stated by the Board, the victim was

"completely defenseless" and "vulnerable." See Petition, Exhibit A at 106. Therefore, the Board

reasonably found the offense was carried out in an especially atrocious and heinous manner

under 15 C.C.R. § 2402(c).

In addition to the immutable factors of the crime itself, the Board also determined that

Petitioner had a previous record of violence pursuant to § 2402(c)(2) and an unstable social

[3]Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
(A) Multiple victims were attacked, injured or killed in the same or separate incidents.
(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

9

history pursuant to § 2402(c)(3). As to his record of violence, the Board noted Petitioner had four juvenile arrests including one for strong-arm robbery. Regarding his unstable social history, the Board noted Petitioner had a history of abusing alcohol. These findings were admitted by Petitioner at the hearing. See Petition, Exhibit A at 24-25, 32.

The Board also noted the oppositions of the Santa Ana Police Department and the Orange County District Attorney's Office. Both agencies were strongly opposed to a grant of parole due to the heinous nature of the offense. These statements in opposition were properly considered pursuant to Cal. Penal Code § 3042 and 15 C.C.R. § 2402(b).

Finally, the Board stated it had been ready to set a parole date, but then determined there were certain "lingering remaining questions" that prevented them from granting parole. See Petition, Exhibit A at 108. These concerns were not clearly identified but appeared to pertain to Petitioner's version of events as compared to certain witness statements. The Board stated it reviewed the trial record and found there were "inconsistencies" about the events. Id. at 102. In addition, the Board stated Petitioner had not mentioned anything regarding possible witness intimidation by his girlfriend and some of his friends. Id. at 102. According to the Board, "the comfort level just isn't there yet." Id. at 101. The Board recommended that Petitioner pour through all of his documents, the trial transcripts, probation officer's report, and witness statements to address the unidentified inconsistencies for the Board at the next hearing.

Whatever the inconsistencies that gave pause to the Board, it is clear these inconsistencies were no basis for denying parole. First, the inconsistencies were never clearly identified or discussed with Petitioner, so Petitioner was never given an opportunity to respond. Second, the Board failed to state how these inconsistencies demonstrated he was unsuitable for parole. Third, these inconsistencies were hardly relevant. Petitioner completely accepted responsibility for his actions. He provided a detailed description of his actions and stated he had committed the stabbings for which he was convicted. He showed complete remorse, acknowledged his motive

10

was unacceptable, and apologized for his actions. He stated:

> There is nothing that either one of them did to cause me to do that. I just did it. I was mad. I struck out. I struck out in a bad way. . . . I'm ashamed of it today. I still find it hard to talk about it. It's definitely not something that I ever expect to repeat again.

Id. at 23.

He further stated:

> I could sit here and give you all kinds of reasons about suffering from lack, self-esteem issues or peer pressure issues or being 17, full of hormones, and loaded with alcohol, but to be honest, there was no reason for me to have done that.

Id. at 26.

Therefore, this finding, if it can be called such, was no basis for denying parole.

Therefore, the situation that presents itself is one where Petitioner has been denied parole solely on the basis of the immutable factors of his commitment offense, previous record of violence, and social history. Despite the positive psychological reports and his excellent record while incarcerated, Petitioner has been incarcerated fifteen years beyond his minimum eligible parole date and has been denied parole ten times. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." The Ninth Circuit reaffirmed its holding in Biggs in the case of Irons v. Carey, where it stated that although a denial of parole initially can be justified by relying on the gravity of the offense, over time, "should [the prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." Irons v. Carey, 505 F.3d 846, 853 (9th Cir.2007), citing Biggs, 334 F.3d at 916. This point was recently restated in Hayward v. Marshall, 2008 WL 43716 *7 (9th Cir.2008). In both Biggs and Irons, the Ninth Circuit upheld the denials of parole based solely on the commitment offense, because in each of

11

1  these cases the prisoner had not yet served the minimum term of his sentence. In <u>Hayward</u>,

2  however, the Ninth Circuit reversed the denial of parole finding the commitment offense, in light

3  of the extraordinary circumstances of the case, no longer had predictive value regarding the

4  prisoner's suitability for parole.

5      This case is very much akin to <u>Hayward</u>. As in <u>Hayward</u>, Petitioner has been incarcerated

6  for over 25 years, and has served in excess of his minimum term. Petitioner became eligible for

7  parole 15 years ago and he has been denied parole ten times. In <u>Hayward</u>, the prisoner was denied

8  parole by the Governor on the tenth hearing. <u>Id</u>. at *1. Like the prisoner in <u>Hayward</u>, in the past

9  15 years, Petitioner has been a model inmate, having committed not a single disciplinary

10 infraction. He has programmed exceptionally well. He has worked to acquire several vocations,

11 including electronics, computers, and meat-cutting. <u>See</u> Petition, Exhibit A at 39-40. He has solid

12 plans for the future. He intends to become an apprentice electrician, and he has an offer of

13 employment in construction upon release. <u>Id</u>. at 40-41, 48.  He also desires to volunteer in service

14 work to assist troubled youths and help them avoid making the same mistakes he made. <u>Id</u>. at 36.

15     The Board also noted Petitioner's past problems with alcohol dependency and anger

16 management in finding Petitioner unsuitable for parole. However, these findings are completely

17 unsupportable relative to a determination that he *continues* to be an unreasonable risk of danger

18 to the public. He has made model gains in changing himself and proving these concerns are no

19 longer evident. He has been a consistent participant in the Alcoholics Anonymous ("AA")

20 program since 1992 and he has sought out information on AA meetings for the area where he

21 would be released. <u>Id</u>. at 33-34. He is committed to sobriety and states he is determined never to

22 relapse. <u>Id</u>. He has also completed a 620-hour course in the CALM anger management program,

23 achieving certification as an apprentice facilitator for the program. <u>Id</u>. at 74. He has many

24 laudatory chronos for excellent work performed in his occupations at the prison over the past 87

25 months, and he has never been considered a management problem. <u>Id</u>. at 74, 79. The

26                                          12

27

28

1  psychological reports note he poses a low likelihood of reoffending. Id. at 83. In addition, he has

2  extensive support from family and plans to live with his parents upon release. Id. at 43-47. It

3  should be noted that Petitioner was only 17 years old at the time he committed his crimes.

4  Petitioner's young age at the time further calls into question the reliability of the fact of the

5  commitment offense in predicting Petitioner's potential for future violence.

6      Therefore, other than the immutable nature of Petitioner's crime and pre-conviction

7  history, all applicable criteria indicate he is suitable for parole release. Given Petitioner's

8  exemplary prison behavior and the evidence of his rehabilitation, and in light of the Ninth

9  Circuit's holdings in Irons v. Carey and Hayward v. Marshall, the circumstances of the offense

10  no longer have a predictive value and do not amount to some evidence to support the Board's

11  conclusion that Petitioner is currently an unreasonable risk of danger to the public if released.

12  Irons, 505 F.3d at 854, Hayward, 2008 WL 43716 *8-9.

13      Therefore, the Board's denial of parole has resulted in a due process violation. The

14  petition should be granted, and the Board should be ordered to set a parole release date.

15      As to Petitioner's claim that his current sentence amounts to cruel and unusual

16  punishment, Respondent correctly argues the claim is meritless because life imprisonment for

17  murder is not constitutionally disproportionate. Harris v. Wright, 93 F.3d 581, 584 (9th Cir.2006).

18                              **RECOMMENDATION**

19      Based on the foregoing, it is HEREBY RECOMMENDED that:

20      1.      The petition for writ of habeas corpus be GRANTED; and

21      2.      The Board of Parole Hearings be DIRECTED to reverse its February 28, 2006,

22              decision, thereby ordering the release of Petitioner to any applicable term or

23              parole provided by California law, with credit for time since the February 28,

24              2006, decision as if release had been granted and any other term credit which he is

25              entitled to by law.

26                                  13

27

28

1    This Findings and Recommendations is submitted to the assigned United States District

2  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

3  the Local Rules of Practice for the United States District Court, Eastern District of California.

4  Within thirty (30) days after being served with a copy, any party may file written objections with

5  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

6  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

7  and filed within ten (10) court days (plus three days if served by mail) after service of the

8  objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

9  636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time

10  may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th

11  Cir. 1991).

12  IT IS SO ORDERED.

13  **Dated:    March 14, 2008**                            **/s/ Sandra M. Snyder**
                                                          UNITED STATES MAGISTRATE JUDGE

14